IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    $8,755.00 IN UNITED STATES CURRENCY;

    Defendant.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

_____

The United States of America, by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Kurt J. Bohn, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

**JURISDICTION AND VENUE**

1.    The United States of America ("the United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881 seeking forfeiture of the defendant asset as proceeds traceable to one or more violations of 21 U.S.C. § 801 et seq.

2.    This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.  Venue is proper 28 U.S.C. § 1395, as the defendant property is located, and the acts described herein occurred in the District of Colorado.

1

## DEFENDANT PROPERTY

3. Defendant property is more fully described as:

a. Defendant $8,755.00 in United States currency, seized on March 23, 2022, at 1410 Harrison Street, Room 233, Colorado Springs, Colorado, is currently in the custody of the United States Marshal Service, Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4. Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

### Investigation

5. Beginning in March 2022, the District of Colorado, United States Marshals Service, Colorado Violent Offender Task Force (USMS COVOTF), which Drug Enforcement Administration (DEA) Group 2 is a part of, received a collateral lead from the District of New Mexico regarding the federal arrest warrant for Nicholas Blume (Blume) for felon in possession of a weapon and escape. Blume has a previous criminal record to include arrests for aggravated battery with a deadly weapon, possession with intent to distribute controlled substances, motor vehicle theft, and extortion.

6. Deputy U.S. Marshals from the District of New Mexico provided intelligence that Blume was last seen driving a silver Infiniti QX80 with a fictitious New Mexico temporary tag 22T-070932. This temporary tag, 22T-070932 was registered to an Eric Lee, who actually lives in Maryland.

Surveillance of Nicholas Blume (Blume)

7. On March 22, 2022, intelligence was developed by surveillance that Blume was residing in the area of the Quality Inn located at 1410 Harrison Road, Colorado Springs, Colorado.

8. Members of COVOTF established surveillance in the area of the Quality Inn.

9. Your Affiant USMS TFO Eric Ingalsbe spoke with Marla Lopez (Lopez), the General Manager of the Quality Inn in an effort to confirm that Blume was residing there. TFO Ingalsbe learned that a female named Melisa Ortiz (Oritz) checked into room 233 at 2:20 a.m. on March 22, 2022, did not register a vehicle, paid in cash, and wasn't seen at the hotel again after check-in. General Manager Lopez, told TFO Ingalsbe that they found that check-in suspicious. Investigators learned that Ortiz was a possible associate of Blume and was a suspect in a weapons case in 2014. In addition, Ortiz was a witness to homicides in 2016 and 2020.

10. At approximately 10 a.m. Investigators observed a silver Infinity with a New Mexico temporary tag drive into the parking lot of the Quality Inn and park facing the east door to the hotel. They observed a white male with white sweatpants, white sweatshirt, a white hat, and a tattoo on the side of his right eye exit the driver seat and enter the hotel using a key card. The male matched the description of Blume, including that he had a new tattoo next to his eye.

11. At approximately 10:45 a.m., General Manager Lopez called room 233 to reach Ortiz since she had not left a credit card on file for the stay. A male, claiming to be Eric, answered that phone in the room and stated that Melissa is not there.

12. At approximately 11:10 a.m., Investigators and a hotel maintenance worker knocked on the door of room 233, where they were able to positively identify Blume as the sole occupant in the hotel room.

13. At approximately 11:30 a.m., COVOTF members approached room 233 to arrest Blume. At the same time, Colorado Springs Police staged under the window of room 233 and the front entrance to the hotel. They knocked on the door and announced it was the police and for Blume to open the door. Shuffling could be heard inside the hotel room and Colorado Springs PD announced over the radio that Blume was attempting to open the window to jump out and evade arrest. Shortly after, COVOTF members at the door to room 233 heard an interior door shut. Loud verbal commands continued to be given to Blume, saying "Police, come to the door!" and "Nicholas Blume, we know you're in there, we have a warrant!"

14. Investigators attempted to use a key card provided by management on the hotel door but was unsuccessful due to the deadbolt being in place. After repeated commands that the door would be broken down if Blume didn't open the door, a mechanical breach of the hotel door was done. Initially no individuals were seen in the interior room, but the bathroom door was closed and COVOTF members could hear commotion inside the bathroom and the toilet flushing repeatedly. Again, it was stated that it is the police and for Blume to come out with his hands up. Blume could be heard

through the door yelling "No!" and that he is not coming out because he is scared. Shortly after the bathroom door cracked open, COVOTF members arrested Blume.

<u>Defendant $8,755.00 in U.S. Currency</u>

15.     Upon the search incident to arrest, blue pills were observed on the bathroom floor, inside a safe near the toilet, and inside the toilet, confirming that Blume was attempting to destroy illegal narcotics evidence before being apprehended. A cell phone, scale, as well as a large amount of currency was observed in the bathroom next to Blume and inside his wallet. Also, on Blume's person was a false identification card from the state of Maryland for the fictitious name of Eric Lee.

16.     Investigators attempted to interview Blume in the hallway. Blume was asked where he got all the money. Blume responded by saying he sold his BMW. It was discovered that there were BMW keys still on Blume's key ring.

17.     On April 7, 2024, Blume filed a claim with DEA, stating that defendant $8,755.00 in U.S. currency that was taken from him "was legal proceeds from the cash sale of a vehicle. There is no evidence that was present at the time of seizure that ties my asset to the commission or aiding of any criminal activity. The sale of the vehicle only involved transfer of title. No bill of sale was required or created for the transaction. I do not have any further documents related to the transaction."

18.     Searches of law enforcement databases performed by U.S. Marshall Service (USMS) Senior Inspector Tyson Polski revealed that Blume does not have any vehicles registered in his name and has not had any vehicles registered in his name in at least the last 10 years.

19. After the arrest of Blume, General Manager Lopez stated that she had cancelled the reservation in room 233. She also contacted Ortiz to inform her that the reservation was cancelled. Upon that, Lopez gave consent for law enforcement personnel to search the room. COVOTF members searched the room for contraband and found a black backpack in the bathroom that contained numerous rubber bands, latex gloves, plastic bags, and other items associated with drug packaging. A Colorado Springs PD officer located a red backpack on the foot of the bed that contained a clear plastic bag with suspected blue fentanyl pills, a plastic bag of suspected methamphetamine, and a grey bag with four small balloons of suspected heroin. A small plastic bag of suspected heroin with crushed up blue pills, was located in the right nightstand drawer next to the bed. Also located in the red backpack was a small cylinder safe containing a small plastic bag of suspected blue fentanyl pills, a plastic bag of marijuana, and a plastic bag of suspected methamphetamine. Throughout the search of the hotel room, five different cellphones were located that belonged to Blume. In addition, numerous plastic bags, foil, rubber bands, and drug ledgers were located and photographed.

20. Items that were seized: (1) Approximately 33 grams of suspected blue Fentanyl pills located on the bathroom floor; (2) Approximately 46.6 grams of suspected blue Fentanyl pills located in the red backpack on the bed; (3) Approximately 63 grams of suspected methamphetamine located in the red backpack on the bed; (4) Approximately 98.6 grams of suspected heroin in four balloons located in the red backpack of the bed; (5) Approximately 35.5 grams of suspected heroin with crushed up blue pills located in the right nightstand drawer next to the bed; (6) Approximately 36.5

grams of suspected blue fentanyl pills located in a small cylinder safe in the red bag on the bed; (7) Approximately 38.4 grams of suspected marijuana located in a small cylinder safe in the red bag on the bed; (8) Approximately 32.8 grams of suspected methamphetamine located in a small cylinder safe in the red bag on the bed; (9) Undetermined amount of U.S. currency located next to Blume during the arrest and in his wallet next to him; and (10) five cell phones located in the room.

21.   Blume was transported for booking. Shortly after, Ortiz, the registered room holder, showed up to the hotel room. She was interviewed and during the course of the interview she stated that she rented the room for a friend who said it was for a male (Blume) the friend knew. Ortiz stated that she checked into the hotel and handed off the keys to her friend who would pass the keys to Blume. Ortiz said that she didn't meet Blume, that she was never in the hotel room and that none of the belongings were hers.

22.   Blume has had no reported income since 2014 due to the fact that he has been in continuous federal custody from February 13, 2014, to approximately September 1, 2021, and was then in escape status until the time he was arrested on March 30, 2022, in Colorado.

### Criminal History

23.   Blume was arrested on February 13, 2014, for Felon in Possession of a Firearm in the District of New Mexico. He was in the custody of the USMS from February 13, 2014, to approximately August 7, 2015. On approximately April 23, 2015, Blume pled guilty to Felon in Possession of a Firearm and was sentenced to 103 months custody with the Federal Bureau of Prisons. Blume was then confined to Cibola County Correctional

Center in Grants, NM. He was then ordered to report to Dimas Charities Diersen Residential Reentry Center (RRC) in Albuquerque, NM for continue execution of his sentence. Blume failed to report to the RRC on September1, 2021. The escape was reported on September 2, 2021.

<u>Criminal History in Albuquerque, New Mexico</u>

24. On August 6, 2003, Aggravated Battery W/Deadly Weapon (NM Case Number CR1158803).

25. On August 14, 2003, Receiving and Transporting a Stolen Motor Vehicle (NM Case Number CR1193303).

26. On January 15, 2005, Possession W/Intent to Distribute Imitation Controlled Substance (NM Case Number CR85905).

27. On February 26, 2005, Motor Vehicle Theft (NM Arrest Case Number 218097).

28. On September 26, 2007, Possession of Controlled Substance (NM Case Number CR2117207).

29. On February 3, 2011, Aggravated Burglary, Kidnapping, Robbery w/Deadly Weapon (NM Case Number CR231411).

30. On February 14, 2011, Motor Vehicle Theft (NM Case Number CR300211).

<u>Criminal History in El Paso County, Colorado</u>

31. On January 23, 2024, Kidnapping (Docket # D0212022cr001732).

32. The search of Mr. Blume's confinement from 2003 to 2022 supported the finding of no reported income or vehicle ownership.

## VERIFICATION OF NAME

## SPECIAL AGENT, DRUG ENFORCEMENT ADMINISTRATION

I, Steve Waugaman, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

Steve Waugaman
Special Agent, DEA

## FIRST CLAIM FOR RELIEF

32. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

33. By the foregoing and other acts, defendant $8,755.00 in United States currency constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance, or proceeds traceable to an exchange of controlled substance in violation 21 U.S.C. § 801 et seq, and is therefore forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant assets in favor of the United States, that the United States be authorized to dispose of the defendant assets in accordance with law, and that the Court enter a finding

9

of probable cause for the seizure of the defendant assets and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 2nd day of July 2024.

                                      Respectfully submitted,

                                      MATTHEW T. KIRSCH
                                      Acting United States Attorney

By: *s/Kurt J. Bohn*
     Kurt J. Bohn
     Assistant United States Attorney
     United States Attorney's Office
     1801 California Street, Suite 1600
     Denver, CO 80202
     Phone: (303) 454-0100
     Email: kurt.bohn@usdoj.gov
     *Attorney for the United States*